HENRY L. SELF III (California State Bar No. 223153)
SELF & POWERS
1645 Vine Street, Suite 307
Los Angeles, California 90028
Telephone: (323) 487-0383
Fax: (323) 487-0384
Email: hself@selfandpowers.com
        rpowers@selfandpowers.com

MIKHAEL BORTZ (admitted pro hac vice)
BORTZ LAW FIRM, PA
4245 N. Knox Avenue
Chicago, Illinois 60641
Telephone: (800) 608-5407
Fax: (800) 608-5407
Email: mbortz@bortzlawfirm.com

Attorneys for Defendant DANIEL FUENTES, d/b/a LETHAL AMOUNTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN MOSHI, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL FUENTES, an individual doing business as LETHAL AMOUNTS,<br><br>Defendant. | Case No.: 2:18-cv-06725-DMG-JPR<br><br>**NOTICE OF RULE 12(b)(1) MOTION TO DISMISS CLAIM AND RULE 12(f) MOTION TO STRIKE OR IN THE ALTERNATIVE TO BIFURCATE AND STAY CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: November 9, 2018<br>Time: 9:30 A.M.<br>Ctrm: 8c, 8th Floor<br>Trial Date: Not set<br>**Honorable Dolly M. Gee** |

1

1

## TABLE OF CONTENTS

2

**Page**

I.    Preliminary Statement ……………………………………………..……6

II.   Background and Procedural Posture ………………………………….......…7

III.  Memorandum of Points & Authorities ……………………………………...16

    A. Rule 12(b)(1) Legal Standard……………………………………….16

    B. There is No Actual Case or Controversy Present between the Parties as to Copyright Infringement. ……………………………………………...19

    C. All Irrelevant Allegations Related to the Moot Copyright Claim Must be Stricken Pursuant to Rule 12(f). …………………………………………………..29

    D. In the Alternative, The Copyright Claim Should be Bifurcated Pursuant to Rule 42(b) and Stayed. …………………………………………………..30

IV.  Conclusion ……………………………………………………………...31

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alvarez v. Smith*
    558 U.S. 87, 130 S. Ct. 576, 580, 175 L. Ed. 2d 447 (2009) …………………………..17

*Americopters, LLC v. FAA*
    441 F.3d 726, 732 n.4 (9th Cir. 2006) ……………………………………………….7, 18

*Barco N.V. v. Tech. Props. Ltd.*
    No. 08-5398, 2010 WL 604673 …………………….....……………………….....23

*Binetic Australia, Ltd. v. Nucleonics, Inc.*
    495 F.3d 1340, 1344 (Fed. Cir. 2007) …………………….....……………………...23

*Colwell v. Dep't of Health and Human Serv.*
    558 F.3d 1112, 1121 (9th Cir. 2009) ……………………….….......…...…………..19

*Corrie v. Caterpillar*
    503 F.3d 974, 980 (9th Cir. 2007) ………………...…….....……………..………..18

*Crossbow Tech., Inc. v. YH Tech.*
    531 F. Supp. 2d 1117, 1122 - 24 (N.D. Cal. 2007) ………..….………..…………...23

*Dow Jones & Co. v. Ablaise Ltd.*
    606 F.3d 1338, 1348 (Fed. Cir. 2010) ……………….…….……………...….……..22

*Fed. Nat'l Fin., Inc. v. Ousley*
    2006 U.S. Dist. LEXIS 53695, at *14 (N.D. Cal. 2006) ……………………………..25

*Flast v. Cohen*
    392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968) …………………….....…18

*Furminator, Inc. v. Ontel Prods. Corp.*
    246 F.R.D. 579, 590 - 92 (E.D. Mo. 2007) ……………………….……………….....23

*Hangarter v. Provident Life & Acc. Ins. Co.*
    373 F.3d 998, 1021 (9th Cir. 2004) ………………………………………………….30

*Harris v. Torus Nat'l Ins. Co.*
    2014 U.S. Dist. LEXIS 91761, at *4 (M.D. Fla. July 7, 2014) ...…………………….29

*Jinro America Inc. v. Secure Investment, Inc.*
    266 F.3d 993, 998 (9th Cir. 2001) ……………..……………………………………..30

3

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) .............................18

*MCI Communs. Servs. v. City of Eugene*
    359 F. App'x 692, 697 (9th Cir. 2009) ……………………………………..18

*McInerney v. Moyer Lumber & Hardware, Inc.*
    244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) ……………………………………29

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118, 127 (2007) ………………………………………………...18, 25

*Microsoft Corp. v. Webxchange*, Inc.
    606 F. Supp. 2d 1087, 1088 (N.D. Cal. 2009) ……………………….…………17

*Optovue Corp. v. Carl Zeiss Meditec, Inc.*
    2007 U.S. Dist. LEXIS 65647, at *12 (N.D. Cal. Aug. 20, 2007) ……………….....27

*Paramount Pictures Corp. v. RePlayTV*
    298 F. Supp. 2d 921 (C.D. Cal. 2004) ……………………………………………22

*Prudent Publishing Co., Inc. v. Myron Mfg. Corp.*
    722 F. Supp. 17, 21-22 (S.D.N.Y. 1989) ………………………………………22

*Pub. Affairs Assocs., Inc. v. Rickover*
    369 U.S. 111, 112, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962) .............................................17

*RDF Media Ltd. v. Fox Broad. Co.*
    372 F. Supp. 2d 556, 567 (C.D. Cal. 2005) ……………………………………30

*Savage v. Glendale Union High School, Dist. No. 205*
    343 F.3d 1036, 1039 n.2 (9th Cir. 2003) …………………………………………19

*Simaan, Inc. v. BP Prods. N. Am.*, Inc.
    395 F. Supp. 2d 271, 278 (M.D.N.C. 2005) ……………………………………29

*Slone v. Judd*
    2009 U.S. Dist. LEXIS 123821, at *1 (M.D. Fla. Dec. 29, 2009) ………………………29

*St. Clair v. City of Chico*
    880 F.2d 199, 201 (9th Cir. 1989) …………………………………………………19

*Survivor Prods. LLC v. Fox Broad. Co.*
    2001 U.S. Dist. LEXIS 25512, 2001 WL 35829267, *4 (C.D. Cal. June 12, 2001) ……30

*Tequila Cuervo La Rojena, S.A. C.V. v. Jim Beam Brands Co.*
    2011 U.S. Dist. LEXIS 12290, *13 (S.D.N.Y. Feb. 8, 2011) ………………….......23

4

*Thornhill Pub. Co. v. General Tel. & Electronics Corp.*
     594 F.2d 730, 733 (9th Cir. 1979) ……………………………………………………18

*Wilton v. Seven Falls Co.*
     515 U.S. 277, 288 (1942) …………….……………………………………………....17

**STATUTES**

28 U.S.C. § 2201(a) …………………………………………………….........17

15 USC 1114 …………………………………………………………………....26

15 USC 1125(a) ………………………………………………………….............26

15 USC 1125(c) ………………………………………………………….............26

15 USC § 1116 …………………………………………………………...............26

15 USC § 1117(c)(2) …………………………………………………………...26

15 USC § 1117(a) ……………………………………………………………….26

15 USC § 1117(b) ……………………………………………………………….26

Fed. R. Civ. P. 12(f) …………………………………………………….............26

5

## I.   __Preliminary Statement__

This case is a textbook example of improper and premature procedural bullying by repeat intellectual property infringer "Plaintiff" Lauren Moshi, LLC ("Moshi"). The singular case or controversy in this matter is Moshi's blatant infringement of Daniel Fuentes' ("Fuentes'") iconic and distinctive trademark.

When faced with irrefutable evidence of its blatant infringement of Fuentes' duly registered trademark, Moshi (coming fresh off its settlement for stealing the designs of street artist-of-color Estevan Oriol[1]) declined to respond to Fuentes' overtures toward amicable resolution. Instead, Moshi filed a "surprise" overblown declaratory action[2] (the "Declaratory Complaint"), seeking a declaration on the parties' trademark and copyright rights.  Moshi refuses to withdraw its extraneous claim and allegations, *even after Mr. Fuentes provided it with a signed Covenant Not to Sue* for the claim. Given that the claim in question is rendered moot by the covenant, this indicates that Moshi's only purpose is to dilate and multiply this litigation to intimidate Mr. Fuentes (whose business operations are much smaller than Moshi's) and get him to back down from enforcing his valid legal trademark rights.[3]

---

[1] *See* Composite Exhibit A, Oriol Complaint and Docket Record, also submitted in a separate Request for Judicial Notice.
[2] The Declaratory Complaint is coupled with frivolous counts to cancel Fuentes' valid trademark registration, which are addressed in a separate Rule 12(b)(6) motion to dismiss.
[3] Moshi succeeded in part. Fuentes was forced to abandon his plans to file for emergency preliminary injunctive relief, even though his irreparable damages have been mounting every day. Instead, Fuentes has had to reallocate his resources toward responding to the artificial and unnecessary legal morass created by the Declaratory Complaint.

Given that Fuentes is only pursuing relief for trademark infringement, the Declaratory Complaint improperly and needlessly injects nonexistent copyright claims and issues into what would otherwise be a straightforward trademark infringement litigation. As this Motion to Dismiss will demonstrate, the only justiciable claim between the two parties is Fuentes' claim of trademark infringement against Moshi. Moshi's efforts to confuse the issues and muddy the waters with irrelevant allegations and frivolous claims crumble under the light of scrutiny. This Court should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), that portion of the Declaratory Complaint for which no actual case or controversy exists, *i.e.* Moshi's request to litigate irrelevant and hypothetical issues of copyright law.

## II.    Background and Procedural Posture

Because the Court is obligated to consider all relevant facts and the totality of the circumstances on a Rule 12(b)(1) motion to dismiss a declaratory action (including facts outside the four corners of the Declaratory Complaint), *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006), Fuentes provides the following recitation of facts and supporting exhibits.

**Lethal Amounts: A Haven for Outsiders and Marginalized Communities**

Daniel Fuentes, a proudly out and queer, person-of-color, independent small business person is the natural plaintiff in this matter. Since 2010, Fuentes has been doing business under the name and brand "Lethal Amounts." Fuentes has

7

meticulously curated his business endeavors continuously and exclusively under a distinctive design mark (the "LA Logo").  A visual representation of the LA Logo is as follows:



The LA Logo identifies the Lethal Amounts' brand of goods and services to the consuming public. The LA Logo is registered as U.S. Trademark Registration Number 4263931 since 2012 for items of clothing. Lethal Amounts uses the LA Logo as its visual calling card in all its branding. The LA Logo has become synonymous with the Lethal Amounts brand, a fanciful mark that is now imbued with strong secondary meaning throughout the world, and especially in Fuentes' hometown of Los Angeles. Through the investment of time, resources, and incredibly hard work, Lethal Amounts now operates a popular and highly-respected brick and mortar store, art gallery, website, and lifestyle brand. The LA Logo is displayed loud and proud, on grand scale, over the entrance to the Lethal Amounts retail storefront:

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   Lethal Amounts sells multiple items bearing the LA Logo. To wit:

21
22
23
24
25

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS





Because of Fuentes' and Lethal Amounts' long history of participation in L.A.'s underground rock n' roll, queer, and arts scenes, Lethal Amounts is famous for being a repository of unimpeachable counterculture integrity. Given this pedigree, Lethal Amounts' reputation has been founded, in part, on a public perception that Lethal Amounts and Fuentes will not "sell out" to larger corporate interests. [4] In today's fashion marketplace, affiliation with artists and organizations like Lethal Amounts, who bear such "street credibility," is highly sought-after by retail brands for the cultural cachet and access to the profitable niche and youth demographics that it offers.

**Lauren Moshi: A High-End Poseur Line for Hollywood Starlets**

In stark contrast to Fuentes and his Lethal Amounts brand, "Plaintiff" Moshi is a luxury t-shirt and sweatshirt company based in L.A selling under the brand name "Lauren Moshi." Moshi has a retail location on Robertson Boulevard in L.A., another in Malibu, and its products are sold and distributed by third party distributors and

---

[4] *See* "For Outsiders and Outliers, Danny Fuentes' Gallery is a Place to Call Home," L.A. Times, August 28, 2018, http://www.latimes.com/la-et-cm-danny-fuentes-lethal-amounts-gallery-20180828-htmlstory.html, attached hereto as Exhibit B.

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

retailers all over the country, and in department stores and specialty boutiques worldwide. It is important to emphasize that Moshi's business model is based upon co-opting and homogenizing subversive imagery onto t-shirts and sweatshirts to sell at an ultra-high markup to the extremely wealthy.[5] Part of the appeal of Moshi's products is that, by appropriating imagery that is typically associated with outsiders and marginalized communities,  its high-end customers get to feel an exhilarating thrill that they too can partake in "cool" and transgressive punk rock culture. Moshi has already been sued by Latino photographer Estevan Oriol for stealing one of his photographs to reproduce on Moshi's clothing. *See* Composite Exhibit A. Lauren Moshi is a brand that tries to emulate the "street credibility" and subversive "coolness" of an operation like Lethal Amounts. At the same time, Moshi does deals with huge corporations that Fuentes would never associate with, like Disney, that belie its pose of "edginess."[6]

**Lauren Moshi Rips off the LA Logo, Sullying Lethal Amounts' Impeccable Underground Reputation.**

---

[5] *See* "Meet The Coachella-Worthy Label That Calls Emma Roberts, Alessandra Ambrosio & Selena Gomez Fans," Stylecaster.com, http://stylecaster.com/lauren-moshi-emma-roberts-alessandra-ambrosio-selena-gomez-celebrity-fashion/, attached hereto as Exhibit C.
[6] *See* "PRE-ORDER THE WICKED COOL DISNEY VILLAINS LAUREN MOSHI COLLECTION," https://style.disney.com/fashion/2018/09/10/disney-villains-lauren-moshi-collection/ , attached hereto as Exhibit D.

11

In July 2018, Fuentes saw on social media that Moshi was selling clothing that featured a mark that is confusingly similar to the LA Logo (the "Infringing Items"). The following are examples of the Infringing Items:

  

The design on the Infringing Items is clearly almost identical and confusingly similar to the LA Logo (the "Infringing Mark"). As well, the Infringing Mark is placed on the garments in the same scale as Lethal Amounts' usage of the LA Logo on Lethal Amounts clothing items. The infringing items are aggressively marketed online and no doubt have already been distributed by Moshi across the country, if not the world. There is no credible question that Moshi's use of the Infringing Mark is likely to confuse members of the public, and indeed did confuse them, into mistakenly believing that Fuentes and Lethal Amounts did a collaboration with Moshi, or are the source of, or have licensed, endorsed or approved, or are somehow otherwise associated with the Infringing Items.

Shocked at seeing his LA Logo being so blatantly ripped off, Fuentes shared the situation on his Instagram pages. On July 25, 2018, Michael Moshi (on information and belief, one of the owners of Moshi) sent Fuentes a threatening email. accusing Fuentes of defamation. *See* Declaration of Daniel Fuentes in support of Fuentes' Motion to Rule 12(b)(1) Motion to Dismiss Claim and Rule 12(f) Motion to Strike, or in the Alternative to Bifurcate and Stay Claim ("Fuentes Dec."), Exhibit A.

On July 26, 2018, counsel for Mr. Fuentes ("Bortz") sent a cease and desist letter to Mr. Moshi, advising him that his accusations of defamation were specious, given that Moshi's Infringing Items are in clear violation of Mr. Fuentes' common law and federal trademark rights. *See* DE 1, Exhibit B (the "C&D Letter"). The C&D Letter also included a settlement demand, inviting negotiations and resolution of the matter without having to resort to litigation.

After an initial confirmation that the C&D Letter had been received, nothing was heard from Moshi. Seven days later, on Thursday, August 2, 2016, Bortz followed up with Moshi's counsel ("Baum"), but was unable to reach him and left a message. *See* Declaration of Mikhael Bortz ("Bortz Dec."), ¶ 6. The next day, August 3, 2018, Baum responded to Bortz' voice mail with a one-line email:

"Can we set a time to speak on Thursday, August 16th?"

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

*See* Bortz Declaration, Exhibit 2. While appreciative of Baum's offer to set a call, Mr. Fuentes' business and the Lethal Amounts brand were suffering irreparable harm with each passing day. Waiting another two weeks just to have an initial call was simply not a tenable proposition for Mr. Fuentes. That kind of delay would compel him to move forward with seeking preliminary injunctive relief to stem the tide of his damages. As such, Bortz responded to Baum later that same day, as follows:

> Thank you for getting back to me. I have availability to speak two weeks from now on August 16, currently from 11 am to 4 pm your time. As this is an acutely time sensitive situation for my client, whose financial damages and harm to brand grow daily, we will be filing the complaint and motion for emergency TRO early next week.

> Please let me know what time works for you on August 16, **or if you prefer to speak earlier than that.** (emphasis added).

*Id*. Bortz' response, sent on a Friday, clearly invited Moshi's attorneys to talk before Fuentes filed his claims for trademark infringement, while simultaneously communicating that waiting another 13 days for a first phone call was not acceptable to Fuentes.

That following Monday, Fuentes was surprised to learn that not only had Moshi ignored his overtures toward amicable resolution, but instead its lawyers apparently had worked furiously over the weekend to "race to the courthouse" and file the jumbled and perplexing 25-page Complaint. The Complaint is jumbled because, while it purports to assert only one (1) claim for declaratory relief (DE 1, pp. 24), upon examination it clearly alleges two (2) very distinct causes of action.

14

These are, namely, (i) a claim seeking declaratory relief as to Moshi's liability for copyright infringement (the "Copyright Claim") (DE 1, pp. 9-16); and (ii) a claim seeking declaratory relief as to Moshi's liability for trademark infringement (the "Trademark Claim"). DE 1, pp. 6-8. The Complaint is perplexing because Fuentes is not pursuing a copyright infringement claim against Moshi. Yet the overwhelming majority of the Complaint is comprised of allegations related to copyright infringement (including a mini dissertation on the use of safety pins throughout the history of art and fashion (DE 1, 9-16) and five (5) pages spent discussing Moshi's use of skulls in its fashion items, of which the relevance to the instant matter is not clear). *See* DE 1, pp. 3-5.

Given that he is pursuing only trademark infringement claims against Moshi, and not copyright infringement, Mr. Fuentes was cautiously optimistic that Moshi would be amenable to narrowing the issues in this case during the Local Rule 7-3 conference of counsel. At the Rule 7-3 conference on September 26, 2018, Mr. Fuentes' counsel (Bortz), informed Moshi's counsel Andrew Jablon ("Jablon") that Mr. Fuentes was only pursuing, and the C&D Letter only sought, relief for trademark infringement. Jablon advised that Moshi's position was that it interpreted the C&D Letter to be seeking copyright infringement relief, in addition to trademark relief. Bortz apprised Jablon that, even if, *pro arguendo*, the C&D Letter was possibly

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

ambiguous in that regard (which it is not),[7] all the substantive allegations and references in the C&D Letter pertained trademark rights, and, in any event, *Fuentes is not pursuing a copyright infringement claim against Moshi*. Bortz Dec., par. 7. Moshi's counsel refused to withdraw the claim and irrelevant allegations.

On October 5, 2018, for Moshi's benefit and to eliminate any doubt as to liability for copyright infringement, Fuentes sent Moshi a Covenant Not to Sue, attached hereto as Exhibit X. In the Covenant Not to Sue, Mr. Fuentes bound himself to refrain from pursuing any copyright infringement litigation related to the LA Logo against Moshi or any related parties. There was no response. On October 6, Fuentes' attorney sent an email requesting confirmation that the covenant had been received and reviewed. *See* Bortz Dec. par. 8. There was and has been no response up to the filing of this Motion. *Id*.

It could not be more clear that there is no justiciable copyright case or controversy between the parties. Thus, Moshi is forcing Fuentes to incur the considerable expense of, and forcing this Court to invest valuable resources toward, extensive motion practice for no reason. Moshi's refusal to withdraw its copyright claim and allegations, *even after Mr. Fuentes provided it with a signed Covenant Not*

---

[7] As explained in further detail *infra*, Fuentes maintains that the C&D Letter could not reasonably be construed as an assertion of copyright rights, or that a lawsuit for copyright infringement against Moshi was imminent.

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

*to Sue for copyright infringement*, indicates that Moshi's only purpose here is to improperly dilate and multiply this litigation.

### III.   MEMORANDUM OF POINTS & AUTHROITIES

#### A. Rule 12(b)(1) Legal Standard

The Declaratory Judgment Act, 28 U.S.C. 2201, ("DJA") gives district courts broad discretion "[i]n a case of actual controversy within its jurisdiction . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The DJA creates for federal district courts an "opportunity, rather than a duty" to entertain declaratory actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1942). District courts are afforded broad discretion to dismiss inappropriate declaratory judgment actions, even when the suit might otherwise meet all jurisdictional requirements. *Id.*, at 282. Indeed, the Supreme Court has stated, "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962).

The proper standard for determining whether a case or controversy exists is whether the facts alleged, under all circumstances, show that there is a substantial actual controversy between parties having adverse legal interests of sufficient

17

immediacy and reality to warrant the issue of a declaratory judgment. *Microsoft Corp. v. Webxchange*, Inc., 606 F. Supp. 2d 1087, 1088 (N.D. Cal. 2009). An "actual controversy must be extant" not just "at the time the complaint is filed," but throughout "all stages" of the litigation. *Alvarez v. Smith*, 558 U.S. 87, 130 S. Ct. 576, 580, 175 L. Ed. 2d 447 (2009). The controversy must at all times remain "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). Courts may not entertain actions for declaratory judgment "when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint--it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). Further, "[w]here the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Pub. Co. v. General Tel. & Electronics Corp*., 594 F.2d 730, 733 (9th Cir. 1979); see also *Corrie v. Caterpillar*, 503 F.3d 974, 980 (9th Cir. 2007). The party invoking federal declaratory jurisdiction

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

bears the burden of proving a viable declaratory action. *MCI Communs. Servs. v. City of Eugene*, 359 F. App'x 692, 697 (9th Cir. 2009), *citing Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).

In support of a motion to dismiss under Rule 12(b)(1),

the moving party may submit "affidavits or any other evidence properly before the court…It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citations omitted).

*Colwell v. Dep't of Health and Human Serv.,* 558 F.3d 1112, 1121 (9th Cir. 2009); *accord Savage v. Glendale Union High School, Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009, 124 S. Ct. 2067, 158 L. Ed. 2d 619 (2004) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.").

### B. There is No Actual Case or Controversy Present between the Parties as to Copyright Infringement.

In the instant matter, there is no doubt that the parties have adverse legal interests when it comes to Moshi's trademark infringement of the LA Logo. Appropriately, Fuentes is not seeking dismissal of the Declaratory Complaint's

19

Trademark Claim. The overwhelming majority of the Declaratory Complaint, however, is dedicated, totally unnecessarily, to the Copyright Claim, a cause of action over which no justiciable claim or controversy exists.

Whether by virtue of failing to the read C&D Letter closely, or as an intentional ploy to ambush Mr. Fuentes with spurious issues as a matter of intimidation and gamesmanship, the overhasty and slapdash Declaratory Complaint needlessly and improperly injects irrelevant copyright issues by asserting the Copyright Claim (over which no justiciable case or controversy exists) in response to Fuentes' assertion of his trademark rights. There was no case or controversy when Moshi raced to the courthouse to file the Declaratory Complaint, and there is certainly no case or controversy now: the Rule 7-3 conference of counsel and Mr. Fuentes' execution of a Covenant Not to Sue Moshi for copyright infringement utterly lay to rest any such issue. As such, the Copyright Claim of the Declaratory Complaint must be dismissed.

*The Rule 7-3 Conference of Counsel and Mr. Fuentes' Submission of a Covenant Not to Sue Have Conclusively Mooted Any Copyright Claim or Controversy Between the Parties.*

Up until the point that Moshi filed the Declaratory Complaint, it was not totally clear whether the spurious Copyright Claim was a result of failing to the read C&D Letter closely, or if it was indeed an intentional ploy to ambush Mr. Fuentes with a crush of dilatory litigation. In the aftermath of the Rule 7-3 conference of counsel and the provision of the Covenant not to sue, however, there can be no doubt that

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

Moshi's continued pursuit of, and refusal to withdraw, the Copyright Claim is vexatious and in bad faith.

At the September 26, 2018, Local Rule 7-3 conference of counsel, Fuentes' attorney (Bortz) informed one of Moshi's attorney's (Jablon) that Fuentes intended to file a Rule 12(b)(1) motion to dismiss the Copyright Claim for lack of subject matter jurisdiction, as there was no justiciable case or controversy as to the Copyright Claim. Jablon advised that Moshi's position was that it interpreted the C&D Letter to be seeking copyright infringement relief, in addition to trademark relief. Bortz Dec., par. 7. Bortz clarified that the appearance of the word "copyright" in the C&D Letter was a scrivener's error, and further represented to Jablon, that, notwithstanding whatever ambiguities Moshi assessed that it saw in the C&D Letter, *Fuentes is not pursuing a copyright infringement claim against Moshi*. *Id*. Jablon indicated that Moshi would still not agree to withdraw the Copyright Claim.

To eliminate any doubt as to liability for copyright infringement, Fuentes followed by sending Moshi a Covenant Not to Sue, attached hereto as Exhibit X. The scope of the Covenant Not to Sue is extremely broad. Mr. Fuentes has "unconditionally and irrevocably covenant[ed] to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity" against Moshi and a host of related entities (the "Covered Parties") relating to copyrights in the LA Logo. Covenant at 2. The Covenant Not to

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

Sue applies to all such claims without regard to whether they accrued "before, on, or after" the date of the Covenant Not to Sue and "regardless of whether said Claim arises from Lauren Moshi's or any other Covered Party's past, current, or future conduct." (Covenant at 2). It boggles the mind that Moshi believes that it can credibly assert that a justiciable controversy relating to the Copyright Claim still exists in the face of such sweeping language.

Moshi's refusal to withdraw the Copyright Claim even after receiving the Covenant Not to Sue is in direct contradiction with the law. In *Paramount Pictures Corp. v. RePlayTV*, 298 F. Supp. 2d 921 (C.D. Cal. 2004), this Court held that a covenant not to sue is sufficient to "put an end to a case or controversy, moot the claim, and divest the court of jurisdiction over the matter." *Paramount Pictures*, 298 F. Supp. at 926. This Court remarked with approval that a covenant not to sue is not even strictly necessary – an affidavit evidencing a party's lack of intent to pursue a copyright claim standing alone was sufficient to moot a declaratory action. *Id*., *citing Prudent Publishing Co., Inc. v. Myron Mfg. Corp.,* 722 F. Supp. 17, 21-22 (S.D.N.Y. 1989). This Court agreed with the Southern District of New York that "it is not enough that there may once have been a controversy at the time the suit was commenced if subsequent events have put an end to the controversy." *Id*. at 927. Other courts have similarly held that a broad covenant not to sue removes the threat of litigation and hence divests a district court of subject matter jurisdiction under the

Declaratory Judgment Act. *See, e.g.*, *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) (covenant not to sue divested court of jurisdiction over claims seeking declarations of patent invalidity and non-infringement); *Binetic Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007), *cert. denied*, 553 U.S. 1014, 128 S. Ct. 2055 (2008) (party invoking court's declaratory judgment jurisdiction bears burden of establishing "that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since"); *Tequila Cuervo La Rojena, S.A. C.V. v. Jim Beam Brands Co.*, 2011 U.S. Dist. LEXIS 12290, *13 (S.D.N.Y. Feb. 8, 2011) (declaratory judgment defendant's covenant not to sue "divests this Court of jurisdiction by eliminating the threat of suit for trademark infringement"); *Barco N.V. v. Tech. Props. Ltd.*, No. 08-5398, 2010 WL 604673, at *1 - *2 (N.D. Cal. Feb. 19, 2010) (same); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122 - 24 (N.D. Cal. 2007) (same); *Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579, 590 - 92 (E.D. Mo. 2007) (same). Accordingly, under the law the Copyright Claim fails to establish an actual Article III controversy over copyright infringement of the LA Logo, and therefore it must be dismissed for lack of subject matter jurisdiction.

*Even Before the Rule 7-3 Conference of Counsel or Before Fuentes Provided Covenant Not to Sue, The Record Establishes No Copyright Infringement Case or Controversy Existed at the Time of Filing of the Declaratory Complaint.*

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

Fuentes respectfully submits that even before the Rule 7-3 conference of counsel or provision of the Covenant Not to Sue, there was no reasonable basis for Moshi to assert that a claim for copyright infringement was imminent. Mr. Fuentes' initial July 2018 social media post about Moshi's trademark infringement showed a picture of a Lauren Moshi Infringing Item, and said something to the effect of "Is trademark infringement the highest form of flattery?" *See* Declaration of Daniel Fuentes ("Fuentes Dec."), attached hereto as Exhibit X, par. X.  This post prompted Mr. Moshi to send his threatening July 25, 2018 email, saying he would sue Mr. Fuentes for defamation if Mr. Fuentes did not remove the post exhibiting Moshi's trademark infringement.  No mention of copyright was made in either communication.

Next came the July 26 C&D letter (DE 1, Ex. B). The letter begins with a recitation of Mr. Fuentes' trademark rights. The registration number for the LA Logo and relevant usage and registration dates are noted, and a visual representation of the LA Logo and its use on Lethal Amounts products is provided. The letter then outlines Moshi's behavior and states that Moshi's sale of the Infringing Items "is likely to confuse consumers into believing that you or the unauthorized products have a direct relationship with, are affiliated with, associated with or endorsed by Lethal Amounts."[8]  The letter goes on to state that Moshi's sale of the Infringing Items has

---

[8] For the purposes of upfront disclosure, the C&D Letter, although substantively dedicated solely

caused and will continue to cause irreparable harm to Lethal Amounts' reputation, name, brand, and goodwill.

While it is true that the word "copyright" appears in the C&D Letter two times, this was the result of a scrivener's error. *See* Bortz Dec., par. 4. When juxtaposed against the fact that the entire substance of the C&D is dedicated to trademark issues and makes no substantive references to copyright rights, remedies, infringement standards, or impending litigation, the appearance of the word "copyright" cannot be said to have "crystallized" "adverse positions" between the parties on the subject of copyright infringement such that "a substantial controversy of sufficient immediacy and reality" existed at the time that Moshi filed the Declaratory Complaint. *See Fed. Nat'l Fin., Inc. v. Ousley*, 2006 U.S. Dist. LEXIS 53695, at *14 (N.D. Cal. 2006). Rather, any alleged potential copyright infringement claim was either not asserted or so embryonic and hypothetical that it could not possibly satisfy *Medimmune*'s requirement that disputes be "definite and concrete" before declaratory jurisdiction is sustainable.  549 U.S. at 127. By way of demonstration, the two appearances in context of the word "copyright" in the C&D Letter are as follows:

> It is clear from these images that the copying of the LA Logo by Lauren Moshi is ongoing and deliberate.  This infringing usage of Lethal Amounts' famous and distinctive trademark has caused and will continue to cause irreparable harm to Lethal Amounts' reputation, name, brand, and goodwill. Such actions constitute trademark/trade

---

to recitations of Fuentes' trademark rights and causes of action and remedies under trademark infringement law, does include the word "copyright" twice. The significance of this is discussed in greater detail, *infra*, pp. 21-X.

dress infringement, unfair competition, false designation of origin, trademark/trade dress dilution and blurring, and **copyright** infringement. Lethal Amounts has records of instances of actual consumer confusion caused by Lauren Moshi's illegal conduct.

The law provides numerous remedies for the unauthorized use of a **copyright** or trademark/trade dress, including but not limited to preliminary and permanent injunctive relief, money damages of up to $1,000,000.00 per mark, the infringer's profits, attorney's fees and costs, and punitive damages of up to three times the amount of actual damages. Given the obvious willful infringement here, there is no doubt that a court would award Lethal Amounts all requested relief.

The first appearance of the word "copyright" is at the end of a list of causes of action based in the Lanham Act, specifically: 15 USC 1114 (registered trademark infringement); 15 USC 1125(a) (unfair competition and false designation of origin); and 15 USC 1125(c) (dilution, tarnishment and blurring). These civil actions and their elements are referenced in the body of the C&D Letter (*e.g.*, consumer confusion, sale in commerce, association/endorsement, reputation and goodwill). On the other hand, nowhere in the body of the C&D Letter does it make reference to the elements of a copyright infringement claim (*i.e.*, ownership of a valid copyright and actionable copying of original elements). The second appearance of the word "copyright" is likewise out of place and incongruous with the substance of the C&D Letter. It comes before a list of remedies that are specifically grounded in trademark law: 15 USC § 1116 (injunctive relief); 15 USC § 1117(c)(2) (statutory damages per mark for willful infringement); 15 USC § 1117(a) (defendant's profits and treble damages); and 15 USC § 1117(b) (attorney's fees). There is no mention whatsoever

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS

of the specific legal remedies that are found in copyright law, such as statutory damages of between $750 or more than $30,000 per work infringed, or up to $150,000 dollars per work infringed for willful infringement. Indeed, the word "work," which is used to refer to creations protected by copyright, never appears in the C&D Letter; rather the mark in question is referred to only by the word "trademark" and the sobriquet the "LA **Logo**" (logo being a common word for a visual trademark), further reinforcing that the only legal claims in the C&D Letter sound in trademark law.

In summary, nowhere in the C&D Letter does it assert any copyright rights, recite any copyright-law-specific remedies (*e.g.*, statutory damages), or identify a copyright registration (which is a pre-requisite to bringing suit for copyright infringement). Bizarrely, Moshi even highlights in the Declaratory Complaint that Mr. Fuentes does not currently have a copyright registration for the LA Logo (which certainly should have raised a red flag that copyright infringement was not being asserted by Mr. Fuentes). DE 1, p. 20, ¶ 29. It is axiomatic that, because the absence of a copyright registration will prevent a party from bringing suit for infringement, any apprehension of infringement litigation by is too remote to support a claim under the Declaratory Judgment Act. *Optovue Corp. v. Carl Zeiss Meditec, Inc*., No. C 07-3010 CW, 2007 U.S. Dist. LEXIS 65647, at *12 (N.D. Cal. Aug. 20, 2007).

Another tip off that Mr. Fuentes was not in any way seeking relief for copyright infringement came in the form of the August 3, 2018 email that his counsel, Bortz, sent to Moshi's counsel, Baum. In response to Moshi's proposition that the parties delay an additional two weeks before even having a first phone call to discuss amicable resolution, Bortz' email stated, "[a]s this is an acutely time sensitive situation for my client, whose financial damages and harm to brand grow daily, we will be filing the complaint and **motion for emergency TRO** early next week." (emphasis added). Bortz Dec., Ex. 2. Because a party may not even file a copyright infringement action unless they have a copyright registration (or at the very least, a pending application for registration), let alone pursue, without a copyright registration, emergency preliminary injunction relief of the sort referenced in Bortz' email, this language certainly should have indicated to Moshi's experienced and accomplished intellectual property counsel that a copyright infringement claim was not viable, and thus there existed no reasonable basis to fear a copyright infringement lawsuit. If there was uncertainty, all Moshi's counsel had to do was email back for clarification as to whether Mr. Fuentes was seeking relief under copyright laws. However, instead of trying to communicate and clarify this issue, Moshi launched headlong the next business day with the filing of its overblown Declaratory Complaint.

28

The totality of the circumstances before Moshi filed suit – which in this case would be the conduct and communications of the parties prior to the C&D Letter, the C&D Letter itself, and then the subsequent communications between counsel outlined immediate *supra*- convincingly demonstrates that no actual claim or controversy for copyright infringement existed at the time that Moshi filed suit, and Moshi did not have an objectively reasonable basis to fear that it was in immediate danger of being sued for copyright infringement at that time. These facts provide an additional, independent basis for dismissing the Copyright Claim for lack of subject matter jurisdiction.

### C. All Irrelevant Allegations Related to the Moot Copyright Claim Must be Stricken Pursuant to Rule 12(f).

Rule 12(f) provides in relevant part that on motion or sua sponte, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Slone v. Judd*, 2009 U.S. Dist. LEXIS 123821, at *1 (M.D. Fla. Dec. 29, 2009) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). While Rule 12(f) motions are disfavored generally speaking, district courts nevertheless have broad discretion in determining whether to grant a motion to strike when it is warranted by the circumstances (*i.e.*, when it is clear, as it is here, that the material in question can have no possible bearing upon the subject matter of the

29

litigation, namely, trademark infringment). *Harris v. Torus Nat'l Ins. Co.*, 2014 U.S. Dist. LEXIS 91761, at \*4 (M.D. Fla. July 7, 2014). The purpose of a Rule 12(f) motion to strike is to avoid the waste of time and money that arises from litigating unnecessary issues. *Simaan, Inc. v. BP Prods. N. Am.*, Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005)

In light of the fact that there is no justiciable claim of copyright infringement between the parties, all the allegations in the Declaratory Complaint related to copyright are immaterial or impertinent to the claims remaining in the Complaint: a declaratory action on the issue of Moshi's trademark infringement liability, and the specious claim to cancel the LA Logo. Consequently, the court should strike all such allegations, specifically: DE 1, pp. 3-8, ¶ 8;  pg. 9, ¶ 17 – pg. 19,  ¶ 25; pg. 20, ¶ 29 (to the extent that ¶ 29 references a claim or controversy of copyright infringement); pg. 21, ¶ 30 – pg. 22 ¶ 39 (to the extent these paragraphs reference a claim or controversy of copyright infringement). *See  RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 567 (C.D. Cal. 2005) (granting a Rule 12(f) motion to strike exhibits that were "legally irrelevant"); *Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01-3234 LGB (SHx), 2001 U.S. Dist. LEXIS 25512, 2001 WL 35829267, \*4 (C.D. Cal. June 12, 2001) (granting a Rule 12(f) motion to strike exhibits that had "no possible bearing on the issues before the Court . . . and d[id] not assist in the Court's understanding of the parties' dispute.").

**D. In the Alternative, The Copyright Claim Should be Bifurcated Pursuant to Rule 42(b) and Stayed.**

The decision whether to bifurcate lies within the trial court's sound discretion. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004; *Jinro America Inc. v. Secure Investment, Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). In the unlikely event the Copyright Claim is allowed to proceed, Fuentes respectfully submits that the Copyright Claim should be bifurcated pursuant to Rule 42(b) and stayed pending the resolution of the Trademark Claim. In this way, Mr. Fuentes can have his trademark infringement issues resolved promptly and not be forced to wade through months, if not years, of complicated and subjective copyright discovery and motion practice while suffering continuing damages and irreparable harm.

**IV.   CONCLUSION**

For the foregoing reasons, Fuentes respectfully requests that this motion be granted, and that Moshi's Copyright Claim be dismissed, or in the alternative be stayed.

Date: October 9, 2018                         BORTZ LAW FIRM, P.A.


By:_____/s/_____
          MIKHAEL BORTZ


SELF & POWERS

31

HENRY L. SELF III
RYAN W. POWERS


Attorneys for Defendant FUENTES

1

NOTICE OF MOTION AND MOTION

2

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL
PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

PLEASE TAKE NOTICE that on on Friday, November 9, 2018, at 9:30

5

A.M. or as soon thereafter as the matter may be heard by the Honorable Dolly M.

6

Gee of the above-captioned Court, located at United States Courthouse, 350 West

7

1st Street, Los Angeles, CA, 90012, Defendant Daniel Fuentes d/b/a Lethal

8

Amounts will, and hereby does, move to dismiss the declaratory action on

9

copyright liability filed in the above-captioned action by Plaintiff Lauren Moshi,

10

LLC, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject

11

12

matter jurisdiction , and to strike the following paragraphs pursuant to Federal Rule

13

of Civil Procedure 12(f) on the grounds that the allegations contained therein are

14

irrelevant and impertinent.

15

        a.  pp. 3-5, ¶ 8;

16

        b.  pg. 9, ¶ 17 – pg. 19,  ¶ 25;

17

        c.  pg. 20, ¶ 29 (to the extent that ¶ 29 references a claim or

18

            controversy of copyright infringement);

19

20

        d.  pg. 21, ¶ 30 – pg. 22 ¶ 39 (to the extent these paragraphs reference

21

            a claim or controversy of copyright infringement).

22

23

24

33

25

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, all records and pleadings on file in this action, and all other matters that the court may consider.

Date: October 9, 2018                    BORTZ LAW FIRM, P.A.


By:_____/s/_____
        MIKHAEL BORTZ


SELF & POWERS
HENRY L. SELF III
RYAN W. POWERS

Attorneys for Defendant FUENTES

FUENTES' MOTION TO DISMISS DECLARATORY CLAIM AND TO STRIKE ALLEGATIONS