UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND MOTION TO STRIKE [24] AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [18]**

## I.
## BACKGROUND

This matter is before the Court on Defendant Daniel Fuentes' Motion to Dismiss for Lack of Jurisdiction and to Strike [Doc. # 24 ("12(b)(1) Motion")] and Motion to Dismiss for Failure to State a Claim. [Doc. # 18 ("12(b)(6) Motion").] Defendant, a designer based in Los Angeles, owns a storefront art gallery called Lethal Amounts and a namesake clothing line which use as a logo an image of two open safety pins arranged to form the letters "LA," such that the horizontal part of the "L" forms the midsection of the "A" (in the same fashion as the well-known logo of the Los Angeles Dodgers). [Doc. # 2 ("Compl.") at ¶ 9.] Defendant contends that the logo ("LA Logo") "is intended to call to mind the name . . . Lethal Amounts" rather than Los Angeles. 12(b)(6) Motion at 3. Defendant registered the LA Logo as a trademark in December 2012. Compl., Ex. A.

Plaintiff is an apparel manufacturer based in California. Compl. at ¶ 4. It claims to be the original author of a design similar to the LA Logo. *Id.* at ¶ 23. That design is made up of safety pins arranged to form an identical "LA," except that the clasp end of the safety pins has been replaced by skulls ("Skull Pin Logo"). *Id.* Plaintiff has obtained a copyright registration for the Skull Pin Logo. *Id.* at ¶ 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 2 of 15 |

After a social media post including the Skull Pin Design triggered an email exchange between the parties, Defendant sent Plaintiff a cease and desist letter on July 26, 2018, asserting that Plaintiff's use of the Skull Pin Logo "constitute[d] trademark/trade dress infringement, unfair competition, false designation of origin, trademark/trade dress dilution and blurring, and copyright infringement." *Id*. at ¶¶ 28-29. The letter also threatened to take legal action if Plaintiff did not cease its use of the Skull Pin Logo. Compl., Ex. B at 4. Shortly thereafter, on August 6, 2018, Plaintiff filed this suit. *See id*. The Complaint seeks relief on two fronts. It first seeks a declaratory judgment that the Skull Pin Logo does not "infringe upon the [LA Logo], or constitute trademark/trade dress infringement, unfair competition, false designation of origin, trademark/trade dress dilution and blurring, or copyright infringement." *Id*. at 24. It also requests that the Court cancel Defendant's registration of the LA Logo trademark. *Id.* at 25.

Defendant then sent Plaintiff a Covenant Not to Sue, dated October 3, 2018. [Doc. # 21-2 ("Covenant").] That document stated that Defendant:

> hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing. causing. or permitting to be prosecuted any action in law or equity . . . against [Plaintiff] for infringement of any statutory or common law copyright in the [LA Logo] under the current, former, or any future copyright law of the United States—regardless of whether said Claim for copyright infringement accrues before, on, or after the Effective Date and regardless of whether said Claim arises from Lauren Moshi's or any other Cover Party's past, current or future conduct.

*Id.* According to Defendant, Plaintiff has not responded to the Covenant other than by opposing the instant motions. [Doc. # 20 ("Bortz Decl.") at ¶ 8.][1]

---

[1] The Court may consider evidence outside the pleadings in connection with jurisdictional issues to the extent those issues are separable from the case's merits. *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Plaintiff offers a one-word objection to this evidence: "Relevance." [Doc. # 29.] Plaintiff's objection is **OVERRULED** because the statement is relevant to establishing the facts surrounding the transmission of the Covenant.

The remainder of Plaintiff's objections are also **OVERRULED** as moot because the Court need not consider the evidence to which Plaintiff objects in order to reach its decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 3 of 15 |

## II.
## RULE 12(b)(1) MOTION

Defendant makes two requests in his first motion. He first asks the Court to dismiss the portion of Plaintiff's request for a declaratory relief that pertains to copyright infringement because the Covenant resolved any live controversy between the parties on that issue. He also requests that the Court strike several allegations from the Complaint that he describes as "related to the Copyright Claim." 12(b)(1) Motion at 14, 23.

**A.      Legal Standards**

   **1.      Mootness and the "Case of Actual Controversy" Requirement Under the Declaratory Judgment Act**

Under the Declaratory Judgment Act, courts may only grant declaratory relief to resolve a "case of actual controversy" between interested parties. 28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to the "type of Cases and Controversies that are justiciable under Article III." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). This justiciability determination focuses on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 128.

In other words, in a declaratory judgment action, "all the circumstances must demonstrate that a justiciable Article III controversy exists." *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330 (Fed. Cir. 2007) (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)). Moreover, the actual controversy must be "extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

There is no justiciable controversy when "when the question sought to be adjudicated has been mooted by subsequent developments." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) ("[I]f events subsequent to the filing of the case resolve the parties' dispute,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 4 of 15 |

we must dismiss the case as moot, because [w]e do not have the constitutional authority to decide moot cases.").

**2.     Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored and "often used as a delaying tactic." *N.Y. City Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)).

Courts should deny such motions "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bianchi v. St. Farm Fire and Cas. Co.*, 120 F. Supp. 2d 837, 841 (N.D. Cal. 2000). Without a showing of prejudice, "courts frequently deny motions to strike even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *N.Y. City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (internal quotations omitted).

**B.     Discussion[2]**

**1.     There is No "Case of Actual Controversy" Regarding the Copyright Dispute**

Plaintiff alleges that Defendant's cease and desist letter created an actual controversy by asserting several intellectual property rights, including copyright, that prohibited Plaintiff's use of the Skull Pin Logo. Compl. at ¶ 28-29. Defendant argues that the cease and desist letter was not enough to create an actual case because the inclusion of "copyright" in the letter was a "scrivener's

---

[2] Defendant also submitted a Request for Judicial Notice ("RJN") [Doc. # 22] of the Complaint filed in another action involving Plaintiff. Because the Court need not consider that document in reaching its decision, it **DENIES** the RJN as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 5 of 15 |

error." 12(b)(1) Motion at 19. He also contends that, even if there was an actual controversy after the cease and desist letter, sending the Covenant was sufficient to resolve it. *Id.* at 15. Regardless of whether an actual controversy ever existed, the Court agrees that the Covenant rendered the issue moot.

In intellectual property actions involving requests for judicial declarations of infringement or noninfringement, a defendant's covenant not to sue the plaintiff to enforce a certain intellectual property right can "put an end to the controversy." *Paramount Pictures Corp. v. Replay TV*, 298 F. Supp. 2d 921, 927 (C.D. Cal. 2004) (in the copyright context); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345-47 (Fed. Cir. 2010) ("'[A] covenant not to sue for patent infringement'" can "divest[] the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties.") (*citing Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995); *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (with respect to declaratory judgments regarding an intellectual property right, when a "defendant provides the plaintiff with a covenant not to sue for infringement of that right, that covenant can extinguish[] any current or future case or controversy between the parties, and divest[] the district court of subject matter jurisdiction.").

The Supreme Court recently analyzed whether a similar covenant mooted an ongoing controversy using the "voluntary cessation" test. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013). That test asks: "Could the allegedly wrongful behavior reasonably be expected to recur?" *Id.* at 92. The test levies a "formidable burden" on the covenant's sender to show the "challenged action . . . could not be resumed in this or any subsequent action." *Id.*

Defendant carries that burden here. The Supreme Court held that the "breadth of [the] covenant [at issue in *Already*] suffice[d] to meet the burden imposed by the voluntary cessation test" because it was "unconditional and irrevocable," prevented the sender from "from making any claim *or* any demand," reached "beyond [the plaintiff] to protect [its] distributors and customers," and covered more than the "current or previous designs." *Id.* at 93. Defendant's covenant is materially identical. It is expressly unconditional and irrevocable. *See* Covenant at 2. It precludes any future claims or demands. *Id.* It "reaches beyond" Plaintiff to cover any of its members, shareholders, parents, subsidiaries, predecessors, successors, corporate managers, or employees.

Case 2:18-cv-06725-DMG-JPR   Document 35   Filed 06/25/19   Page 6 of 15   Page ID #:383

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | ***Lauren Moshi, LLC v. Daniel Fuentes*** | Page | 6 of 15 |

*Id.*  And it applies regardless of any changes in copyright law and regardless of whether any such claim arises based on future conduct.  *Id.*  If the covenant in *Already* passed the voluntary cessation test, so does Defendant's.

Nonetheless, Plaintiff argues that because the Covenant does not explicitly waive Defendant's right to bring a claim under California's Unfair Competition Law ("UCL") using copyright infringement as the predicate unlawful act, the Covenant does not wholly bar Defendant from bringing a future claim.³  [Doc. # 26 ("12(b)(1) Motion Opp.") at 14-15.]  Plaintiff is correct that the Covenant does not name the UCL, but the language is expansive enough to encompass UCL actions based on copyright infringement.  The Covenant's language not only bars Defendant from suing Plaintiff for copyright infringement, but also bars him from making "any claim(s) or demand(s) . . . or permitting to be prosecuted any action in law or equity" against Plaintiff "for infringement of any statutory or common law copyright . . . ."  The prohibition on bringing *any* claim, *any* demand, or *any* action for copyright infringement is broad enough to preclude Defendant from bringing a copyright-based UCL claim.  That reading is supported by the fact that, as a practical matter, succeeding on a copyright-based UCL claim would require proof of the underlying copyright infringement claim.  *See* Cal. Bus. and Prof. Code § 17200 *et seq.*

Moreover, courts have been receptive to parties' *post hoc* representations that covenants not to sue should be interpreted broadly.  *Ablaise Ltd.,* 606 F.3d at 1345 (taking into consideration that "Ablaise later clarified that 'Ablaise incorporates herein that Ablaise's covenant not to sue extends to Dow Jones' past products or use and includes Dow Jones' licensees' use of any Dow Jones' website or product.'").  In response to Plaintiff's UCL argument, Defendant states in clear terms that he interprets the Covenant's language stating that he will not file suit "for infringement *of any statutory or common law copyright*" to mean that he "agrees not to pursue Moshi for copyright infringement under any theory," including through the UCL.  [Doc. # 31 ("12(b)(1) Motion Reply").]

---

³ Liability under the UCL is "derivative of liability under another statutory violation."  *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1074 (C.D. Cal. 2010).  The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) (internal quotations omitted).  In other words, there can be no UCL violation without another predicate violation.  *See id.* ("When a statutory claim fails, a derivative UCL claim also fails.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | ***Lauren Moshi, LLC v. Daniel Fuentes*** | Page | 7 of 15 |

Plaintiff also contends that, as a general matter, the 12(b)(1) Motion is improper because it seeks to "use Rule 12(b)(1) as a scalpel" to excise only the copyright portion of Plaintiff's claim for declaratory relief, rather than attacking the entire action or an entire claim. 12(b)(1) Motion Opp. at 11. Plaintiff argues that Defendant cites no authority for the proposition that defendants may file Rule 12(b)(1) motions aimed only at portions of claims. *Id.* at 12. But that argument highlights the fact that Plaintiff cites no authority holding that a defendant *cannot* direct a Rule 12(b)(1) motion at one aspect of a multi-faceted request for declaratory relief. Indeed, none of the three non-binding cases Plaintiff cites to support its argument even discusses the issue in more depth than simply setting out a general rule statement for Rule 12(b)(1) motions.

The Court agrees with Defendant that Plaintiff's cause of action for declaratory relief could just as easily be styled as several individual causes of action each seeking a declaration that Plaintiff has not violated any of Defendant's individual intellectual property rights. Permitting declaratory relief plaintiffs to evade jurisdictional review of nonjusticiable claims by burying those claims beneath other justiciable claims within a single cause of action would undermine federal courts' ability to police their own jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (courts must *sua sponte* address subject matter jurisdiction concerns when they arise). That tactic would also prevent courts from exercising their "sound discretion" in managing cases involving declaratory relief, since they would effectively be forced to retain issues over which they had no jurisdiction while they adjudicated other jurisdictionally-proper matters. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("[R]eview of a district court's decision to entertain an action under the Declaratory Judgment Act is deferential, under the abuse of discretion standard."). The better course is for courts to entertain motions to dismiss certain claims for declaratory relief on jurisdictional grounds, even if a plaintiff pleads those claims with others and styles them all as a single cause of action.

The Court therefore **GRANTS** Defendant's Motion to Dismiss the portion of the Complaint that seeks a declaratory judgment pertaining to copyright infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 8 of 15 |

### 2. The Disputed Paragraphs in the Complaint are Not Immaterial, Impertinent, or Scandalous

Defendant also requests that the Court strike the following paragraphs from the Complaint: paragraph 8, paragraphs 17-25, paragraph 29 (to the extent it references "a claim or controversy of copyright infringement"), and paragraphs 30-39 (to the extent they reference "a claim or controversy of copyright infringement"). 12(b)(1) Motion at 24. Defendant puts forth no specific arguments related to any of these paragraphs. Instead, he argues that "[i]n light of the fact that there is no justiciable claim of copyright infringement between the parties, all the allegations in the [Complaint] related to copyright are immaterial or impertinent . . . ." *Id.* The claims he targets, however, are all still relevant to the live trademark registration and infringement issues remaining in the case or have been neutralized by the Court's ruling on his request for dismissal under Rule 12(b)(1).

#### i. Paragraph 8

Paragraph 8 consists of a series of photographs that Plaintiff included in the Complaint to support its allegation that it is "well known for [its] use of skulls in . . . artwork and apparel." Compl. at ¶ 8. The allegations and photographs are relevant to Plaintiff's intent in creating the Skull Pin Logo, which is a consideration that weighs on the trademark infringement analysis. *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). The paragraph is therefore relevant.

#### ii. Paragraphs 17-25

In paragraphs 17-22, Plaintiff makes allegations, and includes photographs, relating to what it calls "the history of safety pins in fashion." Compl. at ¶¶ 8; 12(b)(1) Motion Opp. at 17. These allegations are relevant to analyzing the strength of both the LA Logo and the Skull Pin Logo trademarks because the "use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc., a Delaware corporation v. Madacy Entm't, a corporation*, 421 F.3d 1073, 1088 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 9 of 15 |

Paragraphs 23-25 contain photo reproductions of the Skull Pin Logo and explanations of those photos, which are both unquestionably relevant to the Court's eventual trademark infringement determination.

### iii   Paragraph 29

The only portion of paragraph 29 that references copyright infringement is the passage that reproduces Defendant's cease and desist letter. The Court sees no reason to strike portions of that paragraph, especially since the letter is also attached in full as an exhibit to the Complaint. Compl., Ex. B.

### iv.   Paragraphs 30-39

Paragraphs 30-39 lay out Plaintiff's claims for relief. In light of the Court's ruling dismissing the Complaint insofar as it seeks declaratory relief as to copyright infringement, the Court need not also strike the allegations supporting the request for that relief.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss the portion of Plaintiff's Complaint that seeks a declaratory judgment pertaining to copyright infringement, and **DENIES** Defendant's Motion to Strike.

## III.
## RULE 12(b)(6) MOTION

Plaintiff alleges that the Court should cancel Defendant's registration of the LA Logo trademark because (1) the LA Logo is not distinctive enough to have received a registration in the first place, and (2) Defendant obtained the registration through fraud. Compl. at ¶¶ 40-48. Defendant moves to dismiss these claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 10 of 15 |

### A.     Legal Standard

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be plead with particularity.  To adequately plead fraud with particularity, a party must identify "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003)).  In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (alteration in original) (quoting *Vess*, 317 F.3d at 1106).  "[A]llegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

### B.     Discussion

####     1.     **The Complaint Plausibly States a Claim for Trademark Cancellation Based on the LA Logo's Trademark Invalidity**

The Lanham Act gives courts the authority to cancel an invalid trademark registration. *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869 (N.D. Cal. 2012),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 11 of 15 |

*aff'd*, 737 F.3d 546 (9th Cir. 2013). In fact, if a court finds the underlying trademark unenforceable, "a court must cancel [the trademark's] registration." *Id.* (citing *Gracie v. Gracie*, 217 F.3d 1060, 1065–66, 1072 (9th Cir. 2000). Cancellation of a trademark registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." *See Star–Kist Foods, Inc. v. P. J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984) (internal citations omitted). Defendant only challenges Plaintiff's allegations regarding the validity of the LA Logo's registration— he does not challenge Plaintiff's standing to seek cancellation.

Plaintiff alleges that Defendant's mark is unfit for registration because it "lacks distinctiveness and is generic." Compl. at ¶ 48. When determining a mark's validity, courts divide trademarks into "five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). Categories three through five are "inherently distinctive and are automatically entitled to protection because they naturally "serve [] to identify a particular source of a product . . . ." *Id.* Generic marks, on the other hand, "are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Id.* Descriptive marks are not registrable unless the mark's holder shows that the "mark has acquired distinctiveness through secondary meaning." *Id.*

Based on Plaintiff's allegation that the LA Logo is "generic," Defendant initially argued that Plaintiff's allegations are insufficient to support a claim that the LA Logo has "gone generic," or that consumers have come to understand the LA Logo to refer to a particular class of goods as a whole, as opposed to only Defendant's goods. *See id.* at 604; 12(b)(6) Motion at 4-5. Plaintiff responds, however, that it does not claim the LA Logo is generic, only that Defendant's registration should be cancelled because the mark "is not distinctive." 12(b)(6) Motion Opp. at 7.

Having abandoned any genericness theory, Plaintiff argues that its claim should still survive because a complaint need not "use particular labels or 'magic words' to properly state a claim for relief." *Id.* Plaintiff is correct—a plaintiff is not required to specifically plead in its complaint each legal theory its intends to pursue. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). Nor must a complaint "identify the statutory . . . source of the claim raised in order to

Case 2:18-cv-06725-DMG-JPR   Document 35   Filed 06/25/19   Page 12 of 15   Page ID #:389

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 12 of 15 |

survive a motion to dismiss." *Id.* Rather, it need only plead facts sufficient to support those legal theories. *See id.*

As Defendant points out, however, because suggestive, arbitrary and fanciful marks are inherently distinctive, and because Plaintiff admitted it is not claiming the mark is generic, Plaintiff's only remaining invalidity theory is that the mark is descriptive and lacks secondary meaning. 12(b)(6) Motion Reply at 3. Defendant argues that the Complaint does not plead facts to support that theory because it does not make clear what "the LA Logo is descriptive of." *Id.* (citing *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1201 (9th Cir. 2009) for the proposition that the "distinctiveness of a mark can be determined only by reference to the goods or services that the mark identifies.").

But *Lahoti* explained that the descriptiveness analysis does not require that a mark "describe all of [the holder's] services to qualify as 'descriptive.'" *Lahoti*, 586 F.3d at 1201. Instead, descriptiveness focuses on "'whether, when the mark is seen on the goods or services, it immediately conveys information about their nature.'" *Id.* (citing *In re Patent & Trademark Servs. Inc*, 49 U.S.P.Q.2d 1537, 1539 (T.T.A.B.1998)). Answering that question, however, is not appropriate at the pleading stage.[4] *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006) ("Whether a claimed mark has obtained a secondary meaning is a question of fact to be determined by a jury."). At this stage, the Court need only decide whether the Complaint sufficiently alleges that the LA Logo lacks secondary meaning.

A product acquires secondary meaning when consumers associate "the mark with a particular source or sponsor." *Id.* The secondary meaning analysis focuses on: "(1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark;

---

[4] The parties engage in a number of other premature merits arguments. For example, in response to Plaintiff's argument that the LA Logo is geographically descriptive, Defendant argues that the LA Logo is suggestive because it "relates to the brand name Lethal Amounts," and not Los Angeles, thereby "identifying Lethal Amounts as the source of the goods and services identified by the LA Logo." 12(b)(6) Motion at 4. Whether the LA Logo relates to Lethal Amounts or Los Angeles, and whether the answer to that question renders the mark geographically descriptive or suggestive is a merits determination beyond the scope of the present motion challenging the pleadings. The parties also argue over whether, and the extent to which, other commercial uses of safety pins in the fashion industry "de-legitimize" Defendant's mark. *See* 12(b)(6) Reply at 5-6. Again, other commercial uses' effect on the LA Logo's validity is a factual question better suited for resolution at a later stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 13 of 15 |

and (4) whether use of the mark has been exclusive." *Id.*  Although Plaintiff never used the words "secondary meaning" in the Complaint, it alleged enough facts for the Court to draw a reasonable inference that it intended to advance the theory that the LA Logo lacked secondary meaning. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("On a motion to dismiss for failure to state a claim, the court must . . . draw[] all reasonable inferences from the complaint in [the plaintiff's] favor.").

The Complaint notes that Defendant registered the trademark in December 2012 and has used it in connection with his art gallery and clothing line.  Compl. at ¶ 1 (alleging that Defendant "operates an art gallery in Los Angeles, and incidental to that business, sells a limited variety of apparel products embellished with certain designs including" the LA Logo), Ex. A.  And it states that Defendant disclaimed the use of "the letters 'LA' apart from the mark" in his registration. *Id.* at ¶ 11.  Plaintiff also includes a lengthy discussion of other companies' and individuals' uses of the letters LA and safety pins in the last half-century. *Id.* at ¶¶ 11-28; *see also Id.* at ¶ 48 ("Simply put, by virtue of the generic nature of the mark, the widespread use by others of safety pins to form letters, and Plaintiff's own dilution of his claimed mark, the PIN Mark lacks distinctiveness and is generic.").

These allegations do not correspond neatly with all the factors *Miller* outlined, but arguably relate to factors two through four.  Although it is a close call, the Court determines that the allegations are enough to survive the pleading stage. *See AirWair Int'l Ltd. v. Schultz,* 84 F. Supp. 3d 943, 961 (N.D. Cal. 2015) (construing similar allegations "in the light most favorable to the [p]laintiff" to hold that the plaintiff "sufficient[ly]" alleged that the disputed marks "d[id] not have secondary meaning," that "consumers d[id] not predominantly associate the mark with a specific producer," and that they "lack[ed] distinctiveness.") (internal quotations omitted).

The Court **DENIES** Defendant's Rule 12(b)(6) motion as to Plaintiff's claim for cancellation of Defendant's trademark registration on the basis of the LA Logo's underlying trademark invalidity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6725-DMG (JPRx)** | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 14 of 15 |

**2.     Fraud**

Plaintiff alleges in its Complaint that Defendant obtained his trademark registration through fraud on the Patent and Trademark Office ("PTO").  Specifically, Plaintiff claims that Defendant intentionally registered the LA Logo for use in connection with a wide range of apparel when he only intended to use the mark in connection with a narrower range of items.  Compl. at ¶¶ 41-44.  Plaintiff's theory is that because Defendant knowingly obtained a broader registration than he actually intended to use, the Court should be able to draw an inference that Defendant did so with fraudulent intent.

To bring a claim "for cancellation [of a trademark] based on fraud, a claimant must establish the following elements: 1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance."  *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018).  Defendant challenges Plaintiff's allegations only as to the knowledge and intent elements.

Although the allegations regarding Defendant's knowledge and intent are brief—and although it is again a close call—the allegations are sufficient to give Defendant "notice of the particular misconduct which is alleged to constitute the fraud charged so that [he] can defend against the charge.'"  *United Healthcare Ins. Co.*, 848 F.3d at 1180.  The Complaint's language makes clear that the alleged misconduct is the intentional acquisition of an impermissibly broad trademark registration.  Put differently, Plaintiff has alleged the "who" (Defendant), the "what" (procuring an overbroad trademark registration), the "when" (December 2012), the "where" (the PTO and the address listed on Defendant's registration), and the "how" (by representing a wider scope of use than actually intended).  *Ebeid ex rel. U.S.*, 616 F.3d at 998.  Despite their brevity, these allegations put Defendant on notice of the parameters of the claim he must defend.

The Court therefore **DENIES** Defendant's Rule 12(b)(6) motion as to Plaintiff's claim for cancellation of Defendant's trademark registration on the basis of Defendant's fraud upon the PTO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6725-DMG (JPRx) | Date | June 25, 2019 |
|---|---|---|---|
| Title | *Lauren Moshi, LLC v. Daniel Fuentes* | Page | 15 of 15 |

### C.     Leave to Amend

Should a court dismiss certain claims, it must also decide whether to grant leave to amend. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2)); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend "should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.' *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

Plaintiff cannot cure its allegations relating to its request for a declaratory judgment regarding copyright infringement. As explained above, Defendant's Covenant entirely resolves the controversy between the parties as to that issue. The Court therefore **DENIES** leave to amend with respect to the copyright infringement aspect of Plaintiff's request for declaratory relief.

### IV.
### CONCLUSION

In light of the foregoing, the Court issues the following rulings:

1. Defendant's Rule 12(b)(1) Motion to Dismiss Plaintiff's Request for Declaratory Relief is **GRANTED,** with prejudice, with respect to copyright infringement;

2. Defendant's Rule 12(f) Motion to Strike various paragraphs from Plaintiff's Complaint is **DENIED**;

3. Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Claim for Cancellation of Defendant's Trademark is **DENIED**; and

4. Defendant shall file his Answer within 21 days from the date of this Order.

**IT IS SO ORDERED.**