1    RYAN W. POWERS (California State Bar No. 291784)
     5807 Fayette Street
2    Los Angeles, California 90042
     Telephone: (801) 750-7926
3    Fax: (323) 487-0384
     Email: ryan@ryanpowerslaw.com
4

5    MIKHAEL BORTZ (admitted pro hac vice)
     4245 N. Knox Avenue
6    Chicago, Illinois 60641
     Telephone: (800) 608-5407
7    Fax: (800) 608-5407
     Email: mbortz@bortzlawfirm.com
8

9    Attorneys for Defendant
     DANIEL FUENTES, d/b/a LETHAL AMOUNTS
10

11                      UNITED STATES DISTRICT COURT

12                     CENTRAL DISTRICT OF CALIFORNIA

13

14   LAUREN MOSHI, LLC, a                  Case No.: 2:18-cv-06725-DMG-JPR
     California limited liability company,
15                                         **AMENDED COUNTERCLAIMS,**
                    Plaintiff / Counter-   **ANSWER AND AFFIRMATIVE**
16                  Defendant,             **DEFENSES**

17        v.

18   DANIEL FUENTES, an individual
     doing business as LETHAL
19   AMOUNTS,

20                  Defendant / Counter-
                    Plaintiff
21

22        v.

23

24                                    1

25

LAUREN MOSHI, LLC, MICHAEL
MOSHI, an individual, and
LAUREN MOSHI, an individual, &
DOES 1-10, inclusive
                    Counter-Defendants.

Defendant Daniel Fuentes ("Fuentes"), by and through undersigned counsel, respectfully submits the following Amended Counterclaim, Answer, and Affirmative Defenses against Plaintiffs/Counter-Defendants Lauren Moshi, LLC, and Counter-Defendants Michael Moshi, Lauren Moshi, and Does 1-10 (collectively "Counter-Defendants"), and in support thereof states as follows:

## **NATURE OF THE ACTION**

1.     This is an action for trademark infringement under Lanham Act, 15 U.S.C. § 1114(1), unfair competition and false designation of origin or sponsorship/endorsement under the Lanham Act, 15 U.S.C. § 1125(a); and trademark infringement, trademark dilution, unfair competition, and deceptive and unfair trade practices under California and common law. This matter arises out of Counter-Defendants' blatant and repeated unauthorized use of Fuentes' iconic, distinctive, and duly registered trademark (the "LA Logo"). Fuentes is a gay, Chicano, first generation American who grew up in Northeast L.A. He is legitimately anti-corporate and a member of and advocate for underrepresented, rebellious, and avant-garde communities. Counter-Defendants have repeatedly infringed upon the intellectual property rights of outsiders and marginalized communities to make its high-end

2

Robertson Boulevard clothing brand seem subversive, and "cool" to their high-end clientele.[1]  Counter-Defendants' willful infringement of Fuentes' LA Logo has caused irreparable harm to Fuentes' goodwill and business reputation, as well as considerable financial losses and hardship.   Due to Counter-Defendants' infringement and unfair competition, Fuentes brings these claims seeking injunctive relief and financial damages.

**FACTS RELEVANT TO ALL COUNTS**

**Lethal Amounts: A Haven for Outsiders and Marginalized Communities**

2.     Since 2010, Fuentes, a proudly out and queer, person-of-color, independent small business person has been doing business under the name and brand "Lethal Amounts." Since 2010, Fuentes has meticulously curated his business endeavors continuously and exclusively under a distinctive design mark, the "LA Logo".  A visual representation of the LA Logo is as follows:



3.     The LA Logo identifies Fuentes' and Lethal Amounts' brand of goods and services to the consuming public. The LA Logo is registered with the U.S. Patent

---

[1] *See* "A Punk Rock Gallery and a Swanky T-Shirt Brand Battle Over the "L.A. Safety Pins" Design," Lamag.com, https://www.lamag.com/citythinkblog/lethal-amounts-lauren-moshi/.

and Trademark Office as U.S. Trademark Registration Number 4263931 since 2012 for items of clothing in Class 25. Fuentes uses the LA Logo as his and Lethal Amounts' visual calling card in all its branding. Fuentes even has the LA Logo tattooed on his neck. The LA Logo has become synonymous with Fuentes and the Lethal Amounts brand, a fanciful mark that is now imbued with strong secondary meaning throughout the world, and especially in Fuentes' hometown of Los Angeles. Through the investment of time, resources, and incredibly hard work, Fuentes now operates a popular and highly-respected brick and mortar store, art gallery, website, and lifestyle brand. The LA Logo was displayed loud and proud, on grand scale, over the entrance to the Lethal Amounts retail storefront:



4.     Through Lethal Amounts, Fuentes sells multiple items bearing the LA Logo. To wit:



5.     Because of Fuentes' and Lethal Amounts' long history of participation in L.A.'s underground rock n' roll, queer, and arts scenes, Lethal Amounts as a brand is famous for being a repository of unimpeachable counterculture integrity. Correspondingly, the LA Logo has become famous in the State of California and beyond as a source indicator for goods and services originating with Fuentes and/or Lethal Amounts.

6.     Given this pedigree, Lethal Amounts' reputation has been founded, in part, on a public perception that Lethal Amounts and Fuentes will not "sell out" to larger corporate interests.[2] In today's fashion marketplace, affiliation with artists and organizations like Fuentes and Lethal Amounts, who bear such "street credibility," is highly sought-after by retail brands for the cultural cachet and access to the profitable niche and youth demographics that it offers.

---

[2] See "For Outsiders and Outliers, Danny Fuentes' Gallery is a Place to Call Home," L.A. Times, August 28, 2018, http://www.latimes.com/la-et-cm-danny-fuentes-lethal-amounts-gallery-20180828-htmlstory.html.

### Lauren Moshi: A High-End Poseur Line for Hollywood Starlets

7.       In stark contrast to Fuentes and his Lethal Amounts brand, Counter-Defendants own and operate a luxury t-shirt and sweatshirt company based in L.A selling under the brand name "Lauren Moshi." Counter-Defendants have a retail location on Robertson Boulevard in L.A., another in Malibu, and their products are sold and distributed by third party distributors and retailers all over the country, and in high-end department stores and specialty boutiques worldwide. It is important to emphasize that Moshi's business model is based upon co-opting and homogenizing subversive imagery onto t-shirts and sweatshirts to sell at an ultra-high markup to the extremely wealthy.[3] Part of the appeal of Moshi's products is that, by appropriating imagery that is typically associated with outsiders and marginalized communities, its high-end customers get to feel an exhilarating thrill that they too can partake in "cool" and transgressive punk rock culture. Moshi has already been sued by Latino photographer Estevan Oriol for stealing one of his photographs to reproduce on Moshi's clothing. *See* Composite Exhibit A hereto, and footnote 1, *supra*. Lauren Moshi is a brand that tries to emulate the "street credibility" and subversive "coolness" of an operation like Lethal Amounts. At the same time, Moshi does deals

---

[3] *See* "Meet The Coachella-Worthy Label That Calls Emma Roberts, Alessandra Ambrosio & Selena Gomez Fans," Stylecaster.com, http://stylecaster.com/lauren-moshi-emma-roberts-alessandra-ambrosio-selena-gomez-celebrity-fashion/.

with huge corporations that Fuentes would never associate with, like Disney, that belie its pose of "edginess."[4]

8.     Counter-Defendants Lauren and Michael Moshi are the owners of Counter-Defendant Lauren Moshi, LLC ("Moshi Co.") and exercise a high degree of control over both the executive level and day-to-day operations of Moshi Co. Together, Lauren and Michael Moshi make all important decisions related to the business, product design, and marketing of Moshi Co. Upon information and belief, Counter-Defendants Lauren and Michael Moshi were personally and individually aware of the existence of the LA Logo and Fuentes' rights therein, as the LA Logo is famous in California, and thus known to Counter-Defendants, based upon pervasive and extensive use, marketing, and media coverage in the Los Angeles area and the State of Californis, where Counter-Defendants are based. Moreover, Fuentes trafficks in the same and/or similar channels of trade as Defendants.  Notwithstanding their personal knowledge of the LA Logo and Fuentes' valid rights therein, Lauren and Michael Moshi, believing Fuentes would not have the resources to protect his mark from a larger company, personally selected the LA Logo for misappropriation to take advantage of and profit off of the LA Logo's substantial cachet and goodwill. Lauren and Michael Moshi personally authorized, directed, ratified, participated in,

---

[4] *See* "PRE-ORDER THE WICKED COOL DISNEY VILLAINS LAUREN MOSHI COLLECTION," https://style.disney.com/fashion/2018/09/10/disney-villains-lauren-moshi-collection/.

and were the moving force behind Counter-Defendant Moshi Co.'s infringing and unfair use of the LA Logo.

**Lauren Moshi Rips off the LA Logo, Sullying Fuentes' and Lethal Amounts' Impeccable Underground Reputation.**

9.    In July 2018, Fuentes saw on social media that Moshi was selling clothing that featured a mark that is a counterfeit of and confusingly similar to the LA Logo (the "Infringing Items"). The following are examples of the Infringing Items:

  

10.    The design on the Infringing Items is clearly an almost identical counterfeit and is confusingly similar to the distinctive LA Logo. This infringing mark is placed on the garments in the same scale as Lethal Amounts' usage of the LA Logo on Lethal Amounts' clothing items. The infringing items are aggressively marketed online, in stores, on social media, to distributors, and no doubt have already been distributed by Counter-Defendants across the country, if not the world.

8

11.     Counter-Defendants have used the LA Logo not only on goods, but also on labels, signs, prints, packages and advertisements, willfully and with the intent to confuse consumers. There is no credible question that Counter-Defendants' use of the LA Logo is likely to confuse members of the public, and indeed did confuse them, into mistakenly believing that Fuentes and Lethal Amounts did a collaboration with Counter-Defendants, and/or are the source of, or have licensed, endorsed, or approved, or are somehow otherwise associated with the Infringing Items.

12.     Counter-Defendants' willful unauthorized use of the LA logo is especially detrimental to Fuentes' business and goodwill, given his and Lethal Amounts' reputation for championing outsider and underprivileged communities, and defiance toward selling out to larger corporate interests. The LA Logo is inherently distinctive, has acquired significant secondary meaning, and people automatically and exclusively associate the LA Logo with Fuentes and Lethal Amounts. By using a counterfeit of the LA Logo, Counter-Defendants seek to derive a commercial benefit from the value and goodwill associated with the LA Logo. Counter-Defendants' infringing conduct confuses the public into thinking that Lauren Moshi and Fuentes  are working together. For people to be confused into thinking that Fuentes is collaborating with a poseur pretender brand like Lauren Moshi that dotes on starlets and does deals with Disney annihilates his credibility as

a countercultural and punk rock pioneer. It also dilutes the LA Logo's distinctive value by tarnishing the special reputation associated with the LA Logo.

13.    Shocked at seeing his LA Logo being so blatantly ripped off, Fuentes shared the situation on his Instagram pages. On July 25, 2018, Counter-Defendants Michael Moshi and Lauren Moshi (the owners of Counter-Defendant Moshi Co.) personally sent Fuentes a threatening and intimidating email accusing Fuentes of defamation, and threatening to sue him if he did not remove his perfectly valid and legal posting.

14.    Incredulous that a blatant infringer was threatening legal action against him, Fuentes, through counsel, sent Counter-Defendants a cease and desist letter on July 26, 2018 as a courtesy before filing suit to see if an amicable resolution was possible without resorting to litigation.

15.    Instead of engaging in a good-faith dialogue to see if pre-litigation settlement was a possibility, Counter-Defendants ignored Fuentes' overtures and instead "raced to the courthouse" to file a jumbled and perplexing declaratory action seeking relief as to Counter-Defendant's liability for copyright infringement (the "Dec Action"). (DE 1). Filed on August 6, 2018, the Dec Action was perplexing because Fuentes was not asserting a copyright infringement claim against Moshi. Yet the overwhelming majority of the Dec Action was comprised of such allegations.

16.     Moshi's only purpose in filing the Dec Action was to improperly dilate and multiply this litigation. By intentionally forcing Fuentes to incur the considerable expense of extensive motion practice for no reason, Counter-Defendants hoped they could stymy Fuentes' ability to pay the legal fees necessary to bring his valid infringement and unfair competition claims.

17.     Counter-Defendants did not succeed in their attempt to bring Fuentes to his knees. True, Fuentes was forced to abandon his plan to file for emergency preliminary injunctive relief (even though his irreparable damages were and have been mounting every day), given that he had to reallocate his resources toward responding to the artificial and unnecessary legal morass created by the Dec Action. But Fuentes also demonstrated backbone and resourcefulness by aggressively fighting back against the Counter-Defendants' irrelevant allegations and frivolous claims. On June 25, 2019, this Court dismissed the Dec Action with prejudice. (DE 35).

18.     Having survived Counter-Defendants' intentional ploy to ambush him with a crush of dilatory litigation, and having exposed the Dec Action for the baseless intimidation tactic and distraction that it was, Fuentes is now finally free to pursue his meritorious trademark infringement and unfair competition lawsuit against Counter-Defendants.[5]

---

[5] Under the Federal Rules of Civil Procedure, Fuentes could not file his Counterclaim Complaint until the Court ruled on the Motion to Dismiss the Dec Action.

19.     To this day, Co-Defendants continue to flagrantly use in commerce, without Fuentes' permission or authorization, a counterfeit LA Logo mark or marks confusingly similar thereto in a manner that is likely to cause and has caused confusion, damages, and irreparable harm to Fuentes.

20.     Moreover, upon information and belief, Counter-Defendants, and in particular Mr. and Ms. Moshi personally, were aware of the existence of the LA Logo and Fuentes' exclusive right to use the LA Logo prior to receiving Fuentes' cease and desist letter. However, given Fuentes' small operation and apparent lack of resources to pursue legal action, Counter-Defendants willfully and intentionally made a calculated decision to ignore and infringe on his rights.

## **THE PARTIES**

21.     Plaintiff Daniel Fuentes does business as Lethal Amounts and at all times material hereto is and has been a resident of Los Angeles, California.

22.     Counter-Defendant Lauren Moshi, LLC ("Moshi Co.") is a limited liability company organized under the laws of the State of California, with a principal place of business in Los Angeles, California.

23.     Counter-Defendant Lauren Moshi is an individual who, upon information and belief, is a resident of Los Angeles, California and one of the owners of Moshi Co.

24.     Counter-Defendant Michael Moshi is an individual who, upon information and belief, is a resident of Los Angeles, California and one of the owners of Moshi Co.

25.     Counter-Defendants Does 1-10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Fuentes. When their true names and capacities are ascertained, Fuentes will amend this complaint by inserting their true names and capacities herein as a Doe acted with the other Counter-Defendants and is responsible for the damages Fuentes alleged herein. Each reference in this complaint to any defendant also refers to all defendants sued under fictitious names.

26.     Each of the Counter-Defendants acted as an agent for each of the other Counter-Defendants in doing the acts or omissions alleged in this Counterclaim, and each Counter-Defendant ratified and otherwise adopted the acts and statements of the other Counter-Defendants and was at all times acting within the course and scope of such agency with the knowledge and approval of each of the other Counter-Defendants so as to make them directly and vicariously liable to Fuentes for the conduct complained of herein, to the extent relevant.

**JURISDICTION AND VENUE**

27.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, et seq., and under the statutory and common law of unfair

13

competition, trademark infringement, trademark dilution, and unfair and deceptive trade practices. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, and 15 U.S.C. § 1121.

28.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case because Fuentes resides in this District, and, on information and belief, Counter-Defendants are subject to personal jurisdiction in this District and/or a substantial part of the events or omissions giving rise to the instant claims occurred in this District.

29.     This Court has supplemental jurisdiction over the related common law and state claims in this action pursuant to 28 U.S.C. § 1338 and 1367(a).

## LEGAL CAUSES OF ACTION

### COUNT I – TRADEMARK INFRINGEMENT UNDER 15 USC 1114 AND COMMON LAW

30.     Fuentes repeats and realleges each and every allegation of paragraphs 1 through 29, above, as though fully set forth herein.

31.     Fuentes is the owner of federally-registered, statutory, and common law rights in the LA Logo. The LA Logo identifies Fuentes and his brand, Lethal Amounts, as the exclusive source of goods and services bearing such logo.

32.     Fuentes owns U.S. Trademark Registration Number 4263931 for the LA Logo since 2012. The LA Logo registration is valid and protectable.

33.     Since 2010, Fuentes has meticulously curated his business endeavors in interstate commerce continuously and exclusively under the LA Logo.  Fuentes has

14

established substantial commercial reputation and goodwill in the LA Logo through his substantial, continuous, exclusive use of the LA Logo and almost a decade of tireless work, promotion, marketing, and investment.

34. As described above, Counter-Defendants, without the consent or authorization of Fuentes and in violation of 15 U.S.C. §§ 1114(1)(a) and (b), intentionally and willfully have made use in commerce of a counterfeit of the LA Logo and/or other words, terms, names, symbols, or devices, or any combination thereof in such a way that it causes consumer confusion and mistake that Counter-Defendants and their products are associated with, endorsed by, affiliated with, sponsored by, otherwise connected with Fuentes.

35. As a direct and proximate result of Counter-Defendants' wrongful acts, Fuentes has suffered and will continue to suffer financial damages and irreparable harm to his registered trademark, business reputation, and good will. Unless restrained, Counter-Defendants will continue to misuse the LA Logo or marks confusingly similar thereto. Fuentes has no adequate remedy at law and is entitled to an injunction restraining Counter-Defendants and, as applicable, their officers, members, agents, servants, and employees and all persons acting in concert with them, from engaging in further acts of infringement. Fuentes is also entitled to an injunction ordering the destruction of any goods, labels, packaging or any components bearing the counterfeit LA Logo.

36.     Fuentes is entitled to recover from Counter-Defendants the actual damages that Fuentes has sustained, is sustaining, and/or is likely to sustain as a result of Counter-Defendants' wrongful acts.

37.     Fuentes is further entitled to recover from Counter-Defendants the gains, profits, and advantages that Counter-Defendants have obtained as a result of their wrongful acts.

38.     Because of the willful nature of Counter-Defendants' wrongful acts, Fuentes is entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

39.     Fuentes is entitled to recover his costs of suit, attorney's fees, and prejudgment interest because Counter-Defendants' conduct was willful and this is an exceptional case.

40.     Fuentes is further entitled to seek statutory damages for willful infringement of up to $2,000,000, for use of a counterfeit mark.

**COUNT II – TRADEMARK INFRINGEMENT & FALSE DESIGNATION OF ORIGIN UNDER 15 USC 1125(a) AND COMMON LAW**

41.     Fuentes repeats and realleges each and every allegation of paragraphs 1 through 40, above, as though fully set forth herein.

42.     Fuentes is the owner of federally-registered, statutory, and common law rights in the LA Logo. The LA Logo identifies Fuentes as the exclusive source of goods and services bearing such logo.

16

43.    Since 2010, Fuentes has meticulously curated his business endeavors in interstate commerce continuously and exclusively under the LA Logo.  Fuentes has established substantial commercial reputation and goodwill in the LA Logo through his substantial, continuous, exclusive use of the LA Logo and almost a decade of tireless work, promotion, and investment.

44.    As described above, Counter-Defendants, intentionally and willfully are using in commerce, without the consent or authorization of Fuentes and in violation of 15 U.S.C. §§ 1125(a) and (b), the LA Logo or marks confusingly similar thereto in a manner that is likely and does cause confusion with respect to the source and origin of Counter-Defendants' goods and services and is likely to deceive consumers as to Fuentes' affiliation, connection, or association with, or approval or endorsement of, Counter-Defendants, their businesses, and/ products or services.

45.    As a direct and proximate result of Counter-Defendants' wrongful acts, Fuentes has suffered and will continue to suffer financial damages and irreparable harm to his trademark, business, and reputation and/or goodwill. Unless restrained, Counter-Defendants will continue to conduct its business and offer goods and services using the LA Logo or other marks confusingly similar thereto. Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Counter-Defendants and, as applicable, their officers, members, agents, servants, and employees and all persons acting in concert with them, from engaging in further acts

17

of false designation of origin, affiliation, or endorsement. Fuentes is also entitled to an injunction ordering the destruction of any goods, labels, packaging or any components bearing the counterfeit LA Logo

46.     Fuentes is entitled to recover from Counter-Defendants the actual damages that Fuentes has sustained, is sustaining, and/or is likely to sustain as a result of Counter-Defendants' wrongful acts. Fuentes is presently unable to ascertain the full extent of the monetary damages that he has suffered and/or is likely to sustain by reason of Counter-Defendants' acts of false designation of origin, affiliation, or endorsement.

47.     Fuentes is further entitled to recover from Counter-Defendants the gains, profits, and advantages that Counter-Defendants have obtained as a result of their wrongful acts of false designation of origin, affiliation, or endorsement.

48.     Because of the willful nature of Counter-Defendants' wrongful acts, Fuentes is entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

49.     Fuentes is entitled to recover his costs of suit, attorney's fees, and prejudgment interest because Counter-Defendants' conduct was willful and this is an exceptional case.

**COUNT III – UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200 and Common Law**

50.   Fuentes repeats and realleges each and every allegation of paragraphs 1 through 49, above, as though fully set forth herein.

51.   By reason of the foregoing, Counter-Defendants have been, and are, engaged in unlawful, unfair or fraudulent business practices in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

52.   Counter-Defendants' acts complained of herein (which include, but are not limited to, unlawful use of threats and intimidation in violation of Cal. Bus. & Prof. Code § 17046) have injured and will continue to injure Fuentes financially and irreparably, for which no remedy at law exists.  The injury to Fuentes includes harm to the LA Logo, goodwill, and reputation in the marketplace that money cannot compensate. Fuentes is therefore entitled to: (a) injunctive relief restraining and enjoining Counter-Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using the LA Logo or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Counter-Defendant; (b) an injunction ordering the destruction of any goods, labels, packaging or any components bearing the counterfeit LA Logo; (c) restitution of Counter-Defendants' profits earned from its unauthorized use of the LA Logo or any mark, name, symbol, or logo confusingly similar thereto, in which

19

profits Fuentes has a vested interest; (d) the award of Counter-Defendants' unjust profits, as well as sums sufficient to compensate Fuentes for all harm suffered as a result of Counter-Defendant's conduct; and (e) punitive damages.

## COUNT IV – TRADEMARK DILUTION & INJURY TO BUSINESS REPUTATION – Cal. Bus. & Prof. Code § 14247 and Common Law

53.    Fuentes repeats and realleges each and every allegation of paragraphs 1 through 52, above, as though fully set forth herein.

54.    The LA Logo is highly inherently distinctive, as well as enjoying great acquired distinctiveness through secondary meaning. Fuentes has been using the LA Logo exclusively since at least as early as 2010, and has owned a valid trademark registration for the LA Logo since 2012.

55.    Fuentes is the senior user of the LA Logo. As described herein, the distinctive LA Logo is famous throughout Los Angeles, in that it is widely recognized by the general consuming public in Los Angeles and well into other parts of California as a source identifier for goods and services associated with Fuentes and Lethal Amounts.

56.    The LA Logo became famous throughout the State of California prior to the commencement of Counter-Defendants' misappropriation of the mark.

57.    Counter-Defendants are illegally making commercial use of the LA Logo, and only started doing so after the LA Logo became famous. Counter-

Defendants seek to derive credibility and a commercial benefit from the value and goodwill associated with the LA Logo.

58.    As set forth in greater detail herein, Counter-Defendants' illegal use of the LA Logo creates a likelihood of the dilution of, and actually dilutes, the LA Logo's distinctive value by tarnishing the special reputation associated with the LA Logo. It also injures Fuentes' business reputation. This dilution and injury are illegal pursuant to Cal. Bus. & Prof. Code § 14247.

59.    This dilution causes and has caused Fuentes damages and irreparable harm and Fuentes is entitled to the relief set forth in Cal. Bus. & Prof. Code § 14250.

## **PRAYER FOR RELIEF**

WHEREFORE, Fuentes respectfully requests that this Court enter judgment against Counter-Defendants on Fuentes' Counterclaims, and respectfully requests that this Court award Fuentes the following relief:

I.    Injunctive relief restraining and enjoining Counter-Defendants and, as applicable, its officers, members, agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from:

          a.  Using the LA Logo or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Counter-Defendant;

b. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered under the LA Logo or any other mark, name, symbol, or logo, which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods or services that Counter-Defendant caused to enter the stream of commerce or any of Counter-Defendant's commercial activities are sponsored or licensed by Fuentes, are authorized by Fuentes, or are connected or affiliated in some way with Fuentes or his LA Logo;

c. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered under the LA Logo or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the LA Logo;

d. Implying Fuentes's approval, endorsement, or sponsorship of, or affiliation or connection with, Counter-Defendant's goods, services, or commercial activities or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Fuentes and from otherwise interfering with or injuring the LA Logo or the goodwill associated therewith;

22

e.  Engaging an acts that represent or imply that Counter-Defendant is in any way endorsed by, affiliated with, or licensed by Fuentes;

f.  Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs I(a) to (e) above.

II.     Ordering that Fuentes is the exclusive owner of the LA Logo, and that such mark is valid and protectable;

III.    Ordering that Counter-Defendant be required to deliver to Fuentes for destruction any and all goods, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of its possession, custody, or control bearing the LA Logo or any other mark, name, symbol, or logo that is a copy or colorable imitation of incorporates, or is confusingly similar to the LA Logo;

IV.    Granting an award of damages suffered by Fuentes according to proof;

V.     Ordering that Counter-Defendant account to Fuentes for any and all profits earned as a result of Counter-Defendant's acts of infringement in violation of Fuentes's rights under the Lanham Act, Cal. Bus. & Prof. Code §§ 14247, 17200, et seq., and the common law;

VI.    Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117

23

VII.   Ordering restitution of Counter-Defendant's profits earned from its unauthorized use of the LA Logo or any mark, name, symbol, or logo confusingly similar thereto, in which profits Fuentes has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

VIII.  Ordering the relief set forth in the relief set forth in Cal. Bus. & Prof. Code § 14250;

IX.    Granting an award of punitive damages for the willful and wanton nature of Counter-Defendant's aforesaid acts;

X.     Granting an award of statutory damages under 15 U.S.C. 1117(c);

XI.    For pre-judgment interest on any recovery by Fuentes;

XII.   Granting an award of Fuentes's costs, expenses, and reasonable attorneys' fees; and

XIII.  Granting such other and further relief as is just and proper.

## JURY DEMAND

Counter-Plaintiff Fuentes hereby demands trial by jury for all issues in this action triable of right by jury.

Dated: August 23, 2019          BORTZ LAW FIRM, P.A.
                                By: /s/ Mikhael Bortz
                                     MIKHAEL BORTZ
                                and
                                     RYAN W. POWERS
                                Attorneys for Defendant FUENTES

24

## **AMENDED ANSWER AND AFFIRMATIVE DEFENSES**

Defendant Daniel Fuentes ("Fuentes"), by and through undersigned counsel, respectfully submits the following Amended Answer and Affirmative Defenses to Plaintiff's Complaint:

## **GENERAL DENIAL**

Except as otherwise expressly admitted herein, Fuentes denies each and every allegation contained in the Complaint, including, without limitation, any allegations contained in the preamble, headings, subheadings or footnotes of the Complaint, and specifically denies any liability to Plaintiff. Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, moreover, allegations in the Complaint to which no responsive pleading is required shall be considered denied. Fuentes expressly reserves the right to seek to amend and/or supplement this First Amended Answer as may be necessary. Capitalized terms below refer the designation in the Counterclaim above.

1.     Admitted that Fuentes operates an art gallery in Los Angeles, sells apparel, and is the owner of the LA Logo. Remainder denied.

2.     Admitted that Fuentes is the owner of the LA Logo. Remainder denied.

JURISDICTION AND VENUE

3.     Denied.

4.     Unknown, therefore denied, and strict proof thereof demanded.

5.     Denied.

6.      Unknown, therefore denied, and strict proof thereof demanded.

7.      Unknown, therefore denied, and strict proof thereof demanded.

8.      Denied.

9.      Admitted that Fuentes is the owner of the LA Logo. Remainder denied.

10.     Admitted.

11.     Admitted that the registration contains a disclaimer. Remainder denied.

12.     Unknown, therefore denied, and strict proof thereof demanded.

13.     Unknown, therefore denied, and strict proof thereof demanded.

14.     Denied.

15.     Unknown, therefore denied, and strict proof thereof demanded.

16.     Admitted that Paragraph 16 includes an Estevan Oriol photograph. Remainder denied.

17.     Denied.

18.     Denied.

19.     Unknown, therefore denied, and strict proof thereof demanded.

20.     Admitted that Paragraph 20 shows photos of items with safety pins in/on them. Remainder denied.

21.     Admitted that Paragraph 21 shows photos of items with safety pins in/on them. Remainder denied.

22.     Admitted that Paragraph 22 shows photos of items with safety pins in/on them. Remainder denied.

THE DISPUTED ARTWORK

23.     Denied.

24.     Admitted that Paragraph 24 shows a close up of a counterfeit or confusingly similar mark to the LA Logo. Remainder denied.

25.     Unknown, therefore denied, and strict proof thereof demanded.

26.     Denied.

27.     Admitted that Paragraph 27 shows a photo of an item sold by Fuentes where the LA Logo is used as a source designator. Remainder denied.

28.     Unknown, therefore denied, and strict proof thereof demanded. Admitted that Fuentes' counsel sent the cease and desist on July 26, 2018.

29.     The cease and desist letter speaks for itself and Fuentes refers this Court to the document itself for its meaning, content and interpretation. Remainder denied.

FIRST CLAIM FOR RELIEF – DECLARATORY RELIEF

30.     Fuentes incorporates his above responses to Paragraphs 1-29 of the Complaint as if fully set forth herein.

31.     Admitted that Fuentes has sought to enjoin Plaintiff from infringing the LA Logo. Remainder denied.

32.     Denied.

33.   Denied.

34.   Denied.

35.   Denied.

36.   Denied in its entirety as moot pursuant to this Court's June 25, 2019 Order dismissing with prejudice Plaintiff's request for a declaration on copyright liability. [DE 35].

37.   Admitted with respect to trademark issues. Remainder denied as moot pursuant to this Court's June 25, 2019 Order dismissing with prejudice Plaintiff's request for a declaration on copyright liability. [DE 35].

38.   Denied.

39.   Denied.

SECOND CLAIM FOR RELIEF – Cancellation of Registration 4263931

40.   Fuentes incorporates his above responses to Paragraphs 1-39 of the Complaint as if fully set forth herein

41.   Admitted.

42.   Denied.

43.   Denied.

44.   Denied.

45.    Denied in its entirety as moot pursuant to this Court's June 25, 2019 Order noting that Plaintiff has waived any claim for trademark cancellation based on genericness. [DE 35].

46.    Admitted that Paragraph 46 shows a photo of an item sold by Fuentes where the LA Logo, made with bats, is used as a source designator. Remainder denied.

47.    Unknown, therefore denied, and strict proof thereof demanded.

48.    Denied.

PRAYER FOR RELIEF

Fuentes denies that Plaintiff is entitled to any of the relief requested and prays that Plaintiff's prayer for relief be denied in its entirety. Fuentes further prays that judgment be entered for him and against Plaintiff and that the Court grant Fuentes such other and further relief as it deems just and appropriate.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's cancellation claim is barred because the LA Logo is an inherently distinctive, valid, protectable mark, is not descriptive, and has acquired secondary meaning.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's cancellation claim is barred because the LA Logo has been in exclusive and continuous use for over five (5) years and is therefore incontestable.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's cancellation claim is barred by the equitable defenses of unclean hands and trademark misuse.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's cancellation claim is barred because the conduct undertaken by and statements made by Fuentes in the LA Logo trademark application was not wrongful, improper, false or fraudulent.

### PRAYER FOR RELIEF

WHEREFORE, Fuentes respectfully requests that the claims made against him be dismissed, with prejudice.

### JURY DEMAND

Fuentes hereby demands trial by jury for all issues in the Complaint triable of right by jury.

Dated: August 23, 2019          BORTZ LAW FIRM, P.A.
                                By: /s/ Mikhael Bortz
                                        MIKHAEL BORTZ
                                and
                                        RYAN W. POWERS
                                Attorneys for Defendant FUENTES